996 F.2d 1213
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
WAKE COUNTY HOSPITAL SYSTEM, INCORPORATED, Plaintiff-Appellee,
v.
NATIONAL CASUALTY COMPANY, Defendant-Appellant.
 No. 92-2586.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 5, 1993.
Decided: June 22, 1993.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, District Judge. (CA-91-728-5-BR)
 Argued: Michael Bannon Brough, Michael B. Brough & Associates, Chapel Hill, North Carolina, for Appellant.
 Barbara Brandon Weyher, Yater, McLamb & Weyher, Raleigh, North Carolina, for Appellee.
 On Brief: Alison A. Erca, Michael B. Brough & Associates, Chapel Hill, North Carolina, for Appellant.
 Dan J. McLamb, Yates, McLamb & Weyher, Raleigh, North Carolina, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER and WILKINSON, Circuit Judges, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 National Casualty Co. ("National") appeals the decision of the United States District Court of the Eastern District of North Carolina granting summary judgment in favor of Wake County Hospital System, Inc. ("Wake") and holding that Wake's self-insured retention under its professional liability insurance policy was not "other insurance." Finding no error, we affirm.
 
 
 2
 This action arose out of a wrongful death/medical malpractice claim involving neonatal care rendered to Paul Lampe, Jr., a minor, by nurse Sharon Sarvey ("Sarvey"), an employee of Wake. The parents of the deceased child brought a claim with the intent to file suit against Sarvey.[1] Upon notification, Wake, St. Paul Fire and Marine Insurance Co. ("St. Paul") (Wake's insurer), and National Casualty Co. ("National") (Sarvey's insurer) agreed in writing to settle the Lampe claim. The claim was in fact settled before a suit was initiated for an amount less than Wake's deductible, or retention, of $750,000 under its insurance policy with St. Paul.
 
 
 3
 According to the agreement, the remaining 75% of the total settlement was to be funded between Wake and National with the understanding that the coverage dispute would be litigated after the settlement. It was also agreed that the amount, if any, contributed by each party to fund the settlement would remain confidential. The parties failed to agree, however, as to which entity, Wake or National, was ultimately responsible for payment of the 75%.
 
 
 4
 Wake's professional liability insurance with St. Paul covers Sarvey as an employee and thus as a protected person under the policy. However, the terms of the policy are such that Wake has a self-insured retention (essentially a deductible) of $750,000 per person/per event and a $1,000,000 annual total. St. Paul's policy further provides:
 
 
 5
 If other insurance applies to claims or suits covered by this agreement, the insurance under this agreement is excess and we won't make any payments until the other insurance has been used up. This won't be true, however, if the other insurance is specifically written to be excess over this agreement.
 
 
 6
 Joint Appendix ("JA") at 42 (emphasis added). Sarvey's own policy with National also has an "other insurance" clause which provides that "[i]f the insured has other insurance against a loss covered by this policy, this policy shall be excess and secondary over such valid and collectible insurance." JA at 23. However, it does not have a deductible.
 
 
 7
 Consequently, Wake filed a declaratory judgment action seeking to have the district court declare that National's insurance policy was the primary and exclusive coverage for the Lampe settlement. Wake subsequently filed a Motion for Summary Judgment in which it asserted that Wake's self-insured retention was not "other insurance" because it does not fall within the plain and ordinary meaning of the term "insurance." The district court agreed and further concluded 1) there was no payment of a premium or other consideration to Wake by Sarvey; 2) there was no shifting of a risk of loss in the St. Paul policy as to Sarvey for the first $750,000 worth of liability; 3) Wake was not in the business of insurance; 4) Wake was not subject to requirements of ordinary insurers; and 5) National was in the best position to protect itself by drafting clear language in its policies that "other insurance" included "self-insurance."
 
 
 8
 On appeal, National contends Wake is liable for the full amount of the settlement since pursuant to Wake's agreement with its insurer, St.
 
 
 9
 Paul, Wake is "contractually bound" to defend and indemnify its employees for claims up to $750,000 (the amount of the self-insured retention).[2] National arrives at this conclusion by contending Sarvey is a third-party beneficiary to the Wake-St. Paul policy, and, as such, Wake's coverage of up to $750,000 constitutes "other insurance" as used in National's policy. National further argues the Wake-St. Paul policy should be interpreted according to the expectations of Sarvey and National.
 
 
 10
 Upon full consideration of the record, briefs, and arguments of counsel, we find appellant's contentions without merit. The district court's thorough and well written opinion has correctly identified and applied relevant state law. We, therefore, affirm the grant of summary judgment in favor of Wake for the reasons expressed by the district court. Wake County Hosp. Sys. v. National Casualty Co., 804 F. Supp. 768 (E.D.N.C. 1992).
 
 AFFIRMED
 
 
 [1]
 Another party, not relevant here, was also involved in this claim. It later settled with the Lampes for 25% of their claim
 
 
 [2]
 It is undisputed that had Sarvey had no professional liability insurance with National, Wake would have indemnified her